UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JESSICA L. DEWAARD,        )
         )
        Plaintiff,    )    Case No. 1:06-cv-324
         )
v.         )    Honorable Robert Holmes Bell
         )
COMMISSIONER OF        )
SOCIAL SECURITY,        )
         )    __REPORT AND RECOMMENDATION__
        Defendant.    )
_____)

      This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to supplemental security income (SSI) benefits or child's insurance benefits (CIB).[1] Plaintiff's reached her 18th birthday on March 6, 2004.  Plaintiff filed her SSI and CIB applications giving rise to this appeal on July 9, 2004, well after her 18th birthday.  (A.R. 60-61, 213-26). Plaintiff's CIB application asserted a February 29, 2004 onset of disability. (A.R. 60).  Plaintiff's SSI application claimed her date of birth as the onset of disability.  (A.R. 213).  Plaintiff's claims were denied on initial review.

---

    [1] "The Child's Insurance Benefits program targets a limited category of people: children of injured wage earners who either died while fully insured or are entitled to Old Age Insurance Benefits or Disability Insurance Benefits."  FRANK S. BLOCH, BLOCH ON SOCIAL SECURITY § 2:8 (2006).  The purpose of the program is to support children dependent on an insured parent for support.  "Age becomes a factor in claims for Child's Insurance Benefits only after the child turns 18 and benefits are available then only for a continuing disability that began before the child turned 22."  *Id.*  "To be eligible for disabled child's benefits, the claimant must 'at the time [the] application [is] filed' be 'under a disability . . . which began before [s]he attained the age of 22.'"  *Moore v. Commissioner*, 278 F.3d 920, 925 (9th Cir. 2002)(quoting 42 U.S.C. § 402(d)(1)(b)).

On October 20, 2005, plaintiff received a hearing before an administrative law judge at which she was represented by Ms. Christina Tilney, MSW, CSW,  a non-attorney representative. (A.R. 232-67).  During the hearing  plaintiff testified that she was attending her third semester of college at Grand Rapids Community College and that she was pursuing a degree in office administration. (A.R. 236-37).  Plaintiff testified that she had no difficulty driving. (A.R. 246, 252). Plaintiff stated that she drove to her college classes.  (A.R. 244).  Plaintiff stated that in addition to her college studies, she worked approximately five hours per week at a retail store.  (A.R. 237). Plaintiff went horseback riding once a week as muscle therapy.  (A.R. 245).  Plaintiff testified that she attended movies, and that she was able to sit through an entire movie.  (A.R. 250).  Plaintiff reported that she was socially active, attending movies, concerts, and sporting events.  She testified that she and her boyfriend enjoyed line dancing.  (A.R. 253-54).  Plaintiff testified that she had limitations in her ability to walk distances stemming from her cerebral palsy and tight hamstrings. Plaintiff related that her legs tired easily, and that at amusement parks, she used a wheelchair.  (A.R. 240-41, 249).  Plaintiff reported that she performed stretching exercises. (A.R. 243, 257).  She stated that she had difficulty controlling her hands, but she had no difficulty reaching up or out. (A.R. 251). She could tie her shoes, but she found it difficult to button shirts.  (A.R. 246-47).  Plaintiff's handwriting was somewhat slow.  (A.R. 251).  Plaintiff reported that the medication Baclofen made her feel tired.  (A.R. 249, 251).

On January 13, 2006, the ALJ issued a decision finding that plaintiff not disabled. (A.R. 15-25).  On April 26, 2006, the Appeals Council denied review (A.R. 3-5), and the ALJ's decision became the Commissioner's final decision.  On May 12, 2006, plaintiff filed her complaint

seeking review of the Commissioner's decision denying her claims for SSI and CIB benefits. Plaintiff's statement of errors is set forth verbatim below:

I.      The ALJ committed reversible error by concluding that Plaintiff could perform light work even though there was no medical evidence to support that conclusion.

II.     The ALJ committed reversible error by failing to properly consider the testimony of the vocational expert.

III.    The ALJ committed reversible error by not considering Plaintiff's mental impairment.

IV.     The ALJ committed reversible error by not properly considering Plaintiff's claim about her rehabilitation program and her ongoing entitlement to benefits as a disabled adult child.

(Statement of Errors, Plf. Brief at 11, docket # 11).  Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision, and that the Commissioner's decision is supported by substantial evidence.  I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The

court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, No. 05-6649, __ F.3d __, 2006 WL 3951833, at * 1 (6th Cir. Aug. 22, 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ – would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had severe impairments of "cerebral palsy,

scoliosis, and hallux valgus of the feet," and non-severe impairments of a slight speech impediment and post-traumatic stress disorder. Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible:

> While the undersigned does not doubt that the claimant experiences some difficulty, her statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and lifestyle, the degree of medical treatment required, the claimant's demeanor at the hearing, the reports of treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions regarding her ability to work. No physician stated that the claimant could not work. The record clearly shows that she had improved flexibility when doing her stretching exercises and undergoing Botox treatment. The records also shows that the claimant admitted to her treating sources that she had not been doing her exercises as instructed. The record reflects that the claimant engages in a full range of daily activities, including attending college, working on a part-time basis, horseback riding, swimming, doing line dancing, and engaging in a full social life with her boyfriend. At the time the claimant sought treatment for post traumatic stress disorder, it was reported that her thought process, cognition, judgment, motor activities and affect were within normal limits. No physician has placed any limitations on the claimant's activities. The undersigned finds the statement of Dr. Engels to be credible. Dr. Engels noted that the claimant has a slight lumbar curve which was flexible and could be straightened, had good truncal control, had good manual dexterity in the upper extremities, and had good flexibility in the lower extremities. Although the claimant testified at the hearing that the Baclofen made her sleepy, she reported "no sleepiness" to Dr. Kuldanek. The claimant's allegations are neither credible nor supported by the evidence of record.

(A.R. 21). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> The claimant has the residual functional capacity for lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for about 6 hours in an 8-hour workday with regular breaks; could sit for a total of about 6 hours in an 8-hour workday with regular breaks; and could do unlimited pushing and/or pulling. She is totally restricted from climbing ladders, ropes and scaffolds; and she could climb ramps and stairs, balance, stoop, kneel, crouch and crawl no more than occasionally. She could do no constant reaching and feeling and no more than occasional handling and fingering. She should avoid concentrated exposure to vibrations and working around dangerous machinery and would have difficulty with fine motor skills.

(A.R. 24).  Plaintiff did not have any past relevant work.  Plaintiff was 19 years old as of the date

of the ALJ's decision.  Thus, plaintiff was classified as a younger individual.  Plaintiff had at least

a high school education.  Plaintiff was attending college as of the date of the ALJ's decision.  The

ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question

regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE

testified that there were approximately 12,000 jobs in Michigan that the hypothetical person would

be capable of performing.  (A.R. 261-64).  The ALJ held that this constituted a significant number

of jobs.  Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ found

that plaintiff was not disabled.  (A.R. 13-21).  The ALJ found that plaintiff was not entitled to CIB

benefits: "The claimant was not under a 'disability,' as defined in the Social Security Act, prior to

age 22 or at any time through the date [of the ALJ's] decision (20 CFR §§ 404.1520(g) and

416.920(g))."  (A.R. 24).

## 1.

Plaintiff disagrees with the ALJ's determination regarding her RFC.  RFC is the most,

not the least, a claimant can do despite her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).

RFC is a determination made by the ALJ based upon all the evidence within the record.  *Walters*,

127 F.3d at 530.  Plaintiff argues that, "the ALJ committed reversible error by concluding that

Plaintiff could perform light work even though there was no medical evidence to support that

conclusion."  (Plf. Brief at 11, Statement of Errors ¶ I).  Plaintiff asserts that the ALJ erred when

he "overrule[d] [a] non-examining physician who thought that Plaintiff was restricted to a limited

range of sedentary work."  (Plf. Brief at 11).  Plaintiff's argument is based on an excerpt of a

November 8, 2004, residual functional capacity assessment form completed by Saadt Abbasi, M.D.,

a non-examining medical consultant. (A.R. 195-202). The ALJ addressed Dr. Abbasi's opinion

within the context of the record as a whole. The ALJ found a residual functional capacity assessment

completed by Jacob Weintraub, M.D.,[2] another non-examining medical consultant, was more

persuasive and consistent with the record, particularly in light of the absence of any restrictions

imposed by plaintiff's treating physicians:

> No physician has stated that the claimant is unable to work or placed any limitations on the claimant's activities. The undersigned must also consider any medical opinions, which are statements from acceptable medical sources and which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR §§ 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-6p). The undersigned finds the DSS examiner's [Dr. Weintraub's] assessment of February 2004 to be more credible as it is more consistent with the evidence of record. Little weight is being given to the DSS examiner's [Dr. Abbasi's] assessment dated November 8, 2004,[3] in which the claimant is limited to less than a full range of sedentary exertion.

---

[2] On February 9, 2004, Jacob Weintraub, M.D., opined that plaintiff could lift up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday. Plaintiff could sit for about 6 hours in an 8-hour workday. (A.R. 188). Plaintiff was not limited in her ability to push or pull. Dr. Weintraub stated that plaintiff could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. Plaintiff could occasionally stoop, kneel crouch and crawl. (A.R. 190). Plaintiff was limited to occasional handling and fingering. (A.R. 190). He found that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, and hazardous machinery. (A.R. 191).

[3] Dr. Abbasi opined that plaintiff could lift up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk with normal breaks at least 2 hours in an 8-hour workday with medically required hand-held assistive device necessary for ambulation of stairs and uneven ground, sit with normal breaks for about 6-hours out of an 8-hour workday, and limited to occasional use of foot pedals. (A.R. 196). He indicated that plaintiff could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. Plaintiff could occasionally stoop, kneel, crouch and crawl. He stated that plaintiff was limited to work occasionally requiring gross and fine manipulation. Plaintiff was unlimited in reaching in all directions. (A.R. 198). Dr. Abbasi expressed his opinion that plaintiff was "unlimited" with regard to exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dust, gasses, poor ventilation, and hazardous moving machinery. (A.R. 199).

-7-

(A.R. 20-21). It was the ALJ's job to resolve conflicting medical evidence. Judicial review of the Commissioner's final administrative decision does not encompass resolving such conflicts. *Walters v. Commissioner*, 127 F.3d at 528. Furthermore, plaintiff's brief simply ignores the absence of functional restrictions imposed by plaintiff's treating physicians. Upon review, I find that the ALJ's RFC determination is supported by substantial evidence.

## 2.

Plaintiff's second statement of error is that, "The ALJ committed reversible error by failing to properly consider the testimony of the vocational expert." (Plf. Brief at 11, Statement of Errors ¶ II). A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). Here, the ALJ posed a question to the vocational expert ("VE") regarding a hypothetical person age 19 (plaintiff's age), with plaintiff's education (three semesters of college) and the same work experience (no substantial gainful work experience), and with plaintiff's RFC. The VE identified 12,000 jobs within the State of Michigan that the hypothetical person would be capable of performing. (A.R. 261-64). The ALJ found that this constituted a substantial number of jobs. Upon review, it is apparent that the ALJ's decision in this regard is supported by substantial evidence.

The ALJ found that plaintiff's subjective complaints of fatigue were not fully credible, particularly given plaintiff's daily activity level. (A.R. 21). It is well settled that a

hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Chandler v. Commissioner*, No. 03-6585, 2005 WL 430325, at * 4 (6th Cir. Feb. 23, 2005); *Turcus v. Social Security Admin.*, No. 03-2578, 2004 WL 2203545, at * 2 (6th Cir. Sept. 17, 2004). Plaintiff's argument that the ALJ was bound by the VE's testimony in response to a hypothetical question posed by plaintiff's representative, which had accorded full credibility to plaintiff's subjective complaints, requires little discussion. The VE does not determine a claimant's medical restrictions or how they impact on the claimant's residual functional capacity -- that is the ALJ's job. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987) ; *see also McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). The ALJ, having found that plaintiff's subjective complaints were not fully credible, was not bound in any way by a VE's response to a hypothetical question from the plaintiff's representative incorporating a contrary assumption.

### 3.

Plaintiff's third argument is that the ALJ committed reversible error "by not considering Plaintiff's mental impairment." (Plf. Brief at 11, Statement of Errors, ¶ III). Plaintiff presents the argument in these terms:

> [T]he ALJ dismissed Plaintiff's mental impairment, which apparently began in 2003 when she was sexually molested at least in part because her physical impairment made her vulnerable. While she had started treatment in 2005, the impairment had obviously existed before that, and thus it had lasted for more than 12 months, according to *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984), without evidence to the contrary, a disabling impairment proven to exist at some time is presumed to continue. Here, the only evidence indicates that the impairment began in 2003 (211), and is yet another reason for reversal.

(Plf. Brief at 12).  The record shows that the ALJ questioned plaintiff and her representative about plaintiff's counseling.  (A.R. 256-57).  The ALJ's opinion shows that he expressly considered  what little evidence plaintiff presented:

> An intake assessment completed by Ms. Judy Lowry Baars (a counselor) and signed on October 5, 2005, shows the claimant was entering treatment seeking relief from symptoms of post traumatic stress disorder (PTSD) after a history of two episodes of sexual assault over the past two years.  She noted that the claimant was fully oriented, had appropriate appearance, was cooperative, and had no suicidal ideation.  She noted that the claimant's thought process, cognition, judgment, insight, motor activity, and affect were within normal limits.  The claimant was diagnosed with post traumatic stress disorder and was recommended [for] individual, family and group treatment got 6-12 months.  Her GAF was noted as 60, which is indicative of moderate symptoms and moderate difficulty in social, occupational or school functioning as set forth in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM)(Exhibit 7F).

(A.R. 20; *see* A.R. 211-12).  Plaintiff has not identified any functional limitation stemming from plaintiff's mental impairment that the ALJ failed to consider.  I find that plaintiff's argument does not provide any basis for disturbing the Commissioner's decision.

**4.**

Plaintiff's fourth claim of error is that the ALJ did not "properly consider[] Plaintiff's claim about her rehabilitation program and her ongoing entitlement to benefits as a disabled adult child."  (Plf. Brief at 11, Statement of Errors ¶ IV).   The only arguments appearing in plaintiff's brief or reply brief corresponding to the fourth statement of error are set forth verbatim and in their entirety below:

> [T]he case of *Dinkel v. Secretary of H.H.S,* 910 F.2d 315, 318 (6th Cir. 1990) sets forth the criteria for awarding benefits to a disabled adult child.  Plaintiff clearly appeared to meet them, but the ALJ failed to address that issue in his Opinion.  As for the issue of benefits continuing because of her rehabilitation program, he also dismissed that improperly.  The errors in this case are so widespread that this case must be reversed outright or else remanded to a new judge.

-10-

(Plf. Brief at 14).   Generally, arguments raised in a perfunctory manner are deemed waived.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 317 (6th Cir. 2005); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived.").   The arguments appearing under plaintiff's fourth statement of error should be deemed waived.

Alternatively, if not waived, the arguments in plaintiff's fourth statement of error do not provide a basis for disturbing the Commissioner's decision.   The CIB eligibility requirements are listed in the *Dinkel* decision:

> In order to qualify for receipt of child's insurance benefits based on the income of a parent wage earner, the claimant must (1) file an application for child's benefits, (2) at the time of filing, be unmarried and (3) be under age 18, be 18 years or older and have a disability that began before age 22 years old, or be 18 years or older and qualify for benefits as a full time student. 20 C.F.R. § 404.350. The regulations governing child's insurance benefits are set forth at 20 C.F.R. Pt. 404, Subpt. D, and incorporate the regulations at 20 C.F.R. Pt. 404, Subpt. P for purposes of determining disability.  20 C.F.R. § 404.302.

*Dinkel*, 910 F.2d at 318; *see Zharn v. Commissioner*, 35 F. App'x 225, 226 (6th Cir. 2002).  Among the eligibility requirements to receive benefits as the dependent child of an individual entitled to receive old age or disability insurance benefits is that the child must generally be under age 18.  42 U.S.C. § 402(d)(1)(B)(ii).  Plaintiff was 18 years old when she filed her application for CIB benefits.  Different statutory and regulatory provisions apply to CIB claimants age 18 or older.  Plaintiff  was not entitled to benefits unless she established that she was or had been continuously disabled prior to age 22.[4]  *Zahrn*, 35 F. App'x at 227 (Plaintiff was "required to show that he had been under a

---

[4]Section 402(d)(1)(B) describes the eligibility requirements in these terms: "at the time such application was filed [the claimant] was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is

continuous disability which began before his twenty-second birthday . . . .") (citing *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976) and *Futernick v. Richardson*, 484 F.2d 647, 648 (6th Cir. 1973)); *see also Moore v. Commissioner*, 278 F.3d at 925; *Puckett v. Bowen*, No. 87-3710, 1988 WL 4630, at * 2 (4th Cir. Jan. 15, 1988); *Dunlap v. Harris*, 649 F.2d 637, 638 (8th Cir. 1981). Plaintiff's brief and reply brief provide no insight, much less coherent and legally supported arguments, establishing how plaintiff met her burdens in this regard. The ALJ found that, "The claimant was not under a 'disability' as defined in the Social Security Act, prior to age 22 or at any time through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g))."  (A.R. 24).  I find that the ALJ's determination is supported by substantial evidence for the reasons previously stated herein.

The ALJ rejected plaintiff's argument that she was entitled to continue receiving CIB benefits on her father's earnings record after plaintiff reached age 18 because plaintiff was participating in a vocational rehabilitation program.  The ALJ made the following findings:

> The claimant's representative argued at the oral hearing and submitted a letter dated October 28, 2005, in which she argued that an individual who was paid benefits because of a disability is protected from termination of benefits so long as the individual is participating in a vocational rehabilitation program with an expected employment outcome ([20 C.F.R.] § 416.1338).

> The undersigned must point out that the claimant has never been granted disability benefits under Title II or Title XVI.  The benefits which the claimant was receiving as a student and a child of a disabled wage earner were not based on a finding of disability.  Therefore, the representative's argument that the benefits were wrongly terminated in July 2004 is not supported.

---

under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22." 42 U.S.C. § 402(d)(1)(B).  Plaintiff was unmarried.  She had attained age 18.  She was attending college.  Thus, she was not a "full-time elementary or secondary school student."  *See* 20 C.F.R. § 404.367(e)(requiring that the claimant be "in grade 12 or below").

(A.R. 23).  Plaintiff's entire argument consists of the statement that the ALJ "improperly" dismissed

plaintiff's claim for continued benefits.  (Plf. Brief at 14).  Plaintiff's brief  cites no authority.

Eligibility for continued payments under the "vocational rehabilitation" provision is dependent on

a preceding finding that the claimant had been disabled as a result of her impairments:

> (a) When may your benefits based on disability or blindness be continued? Your benefits based on disability or blindness may be continued *after your impairment is no longer disabling*, you are no longer blind as determined under § 416.986(a)(1), (a)(2) or (b), or *your disability has ended* as determined under § 416.987(b) and (e)(1) in an age-18 redetermination, if--
>
> (1) You are participating in an appropriate program of vocational rehabilitation services, employment services, or other support services, as described in paragraphs (c) and (d) of this section;
> (2) You began participating in the program before the date your disability or blindness ended; and
> (3) We have determined under paragraph (e) of this section that your completion of the program, or your continuation in the program for a specified period of time, will increase the likelihood that you will not have to return to the disability or blindness benefit rolls.

20 C.F.R. § 416.1338 (emphasis added).   The ALJ was correct when he found that, "The benefits

which the claimant [had been] receiving as a student and a child of [a] disabled wage earner were

not based on a finding of disability.  Therefore, the representative's argument that the benefits were

wrongly terminated in July 2004 [was] not supported."  (A.R. 23).  Plaintiff's argument does not

provide a basis for disturbing the Commissioner's decision.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be

affirmed.

Dated:  February 6, 2007          /s/  Joseph G. Scoville
                                  United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).